D. G. & U. TRUCK LINES, INC., ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

DUFF TRUCK LINE, INC., ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

114

(Nos. 39191 and 39192—Decided December 22, 1965.)

*Messrs. George, Greek, King & McMahon, Mr. Paul F. Berry, Mr. Herbert Baker* and *Mr. James R. Stiverson,* for appellants.

*Mr. William B. Saxbe,* attorney general, *Mr. Theodore K. High* and *Mr. Clark G. Redick,* for appellee.

*Messrs. Power, Griffith, Jones & Bell* and *Mr. James F. Bell,* for applicant.

HERBERT, J. The basic question at issue here is whether the order of the Public Utilities Commission granting a certificate of public convenience and necessity to the applicant is unreasonable or unlawful. See Section 4903.13 of the Revised Code.

The errors complained of by the appellants may be summarized in three branches:

1. Applicant was not a proper person to whom a certificate could be issued;

2. Applicant failed to prove a "need" for authority to provide the service proffered, in that said certificate authorizes a transportation service similar to that already performed by appellants;

3. By the granting of the application of the applicant, the appellants were denied rights and opportunities provided them in Section 4921.12 of the Revised Code.

In support of the first ground of error, the appellants point out that the applicant for brief periods, both before and after the denial of the application for the certificate, engaged in transportation service as a carrier, and that, consequently, said applicant was not a fit person to receive a certificate.

Appellants rely heavily on the case of *Alspaugh* v. *Pub. Util. Comm.*, 146 Ohio St. 267. It is not disputed that the applicant engaged in transportation service for a short period before filing the application and likewise for a short time following its original denial. The violations are not flagrant. The evidence does not per se warrant denial of the application. *Alspaugh* is not controlling since it concerned a flagrant disregard and wilful violation, over a period of ten years, of the restrictions imposed by the certificate theretofore granted.

An example of conduct which requires the commission to deny an application as a matter of law is found in *Oyster* v. *Pub. Util. Comm.* (1929), 120 Ohio St. 510. The court, in a *per curiam* opinion, at page 514, had the following to say:

"The record discloses that the plaintiffs in error were dissatisfied with the judgment of this court and the order of the Public Utilities Commission, *and defiantly and contemptuously ignored such judgment and such order.*" (Emphasis added.)

The applicant there, as a matter of law, was not a proper person to retain a certificate.

In many cases the exercise of reasonable discretion is not limited by law to one choice. In *Alspaugh,* we affirmed the commissions's exercise of reasonable discretion to reject an application. In the cases at bar, the discretion exercised by the commission was reasonable, and the granting of the certificate to the applicant was proper.

It is important to note that the exercise of discretion must be reasonably directed toward achieving the commission's primary objective, that of securing for the people of Ohio the best possible transportation service. The securing of such service is the polestar of the efforts of the Public Utilities Commission. It sits in the public interest and not to balance equities between private parties.

Therefore, it was not, as a matter of law, an abuse of discretion for the commission to issue a certificate to a party who had briefly engaged in the transportation business without a certificate and contrary to the provisions of Section 4921.10 of the Revised Code, where it was shown that the applicant offered to the public an unusual and necessary service not offered by any other carrier in the area involved.

The first claim of error is overruled.

The second contention of the appellants is the claim that the evidence fails to prove a "need" for the services to be made available by the applicant. In its opinion and order under date of July 29, 1964, the commission made a specific finding upon this contention, as follows:

"The commission further finds that the service proposed by the applicant is not offered by any common carrier authorized to serve the territory involved. The service amounts to a messenger service without interchange with any other carrier, involving same day pickup and delivery. Therefore, the commission finds that the protests are not well made and should be overruled."

Substantial and probative evidence is found in the record to support that finding. Hubert Becker testified that he was district manager for five counties, Van Wert, Mercer, Auglaize, Shelby and Darke, for the Thrifty Supplements, Inc., which handles livestock supplements, feed and antibiotics. The following appears from the record of his testimony:

"Q. Should you call Frosty [applicant] to deliver some

antibiotics to a farmer down in Darke County for instance, when would you expect him to make delivery? A. *It would have to be made within eight hours.*

"Q. Do you feel that as far as you are concerned there is a *need for this type service in your locality?* A. There definitely is. There definitely is." (Emphasis added.)

It is true, as appellants point out, that the transportation of many of the products of the supplements company does not require a certificate. However, if applicant's services were limited to one patron, the enterprise would fail. The value of the service to the supplements company is its availability and promptness. Without a certificate the applicant could not finance and maintain the equipment and personnel necessary for a substantial number of shippers, including the supplements company.

Robert J. Homan, traffic manager for Crown Controls Corporation of New Bremen, Auglaize County, Ohio, testified in part in this language:

"Q. Do you know of any other carrier in your county that can give you, operating in your county, that can give you a similar service? [Being that offered by the applicant.] A. No, actually not from the standpoint that most of the items we have are small items which they wouldn't even be interested in carrying because these contact rings we have are delicate, they have to be put on the seat of the car due to the fragileness of the material.

"Q. Do you feel there is a need for this type of service in your county? A. Definitely."

John E. Scott, traffic manager for appellant Duff Truck Line, testified as follows, on cross-examination:

"Q. If you got a call at 6:45 in the evening from the Hannafin Manufacturing Company in St. Marys to deliver a box weighing, say 10, 15 or 25 pounds from there to Kenton, Ohio, to be delivered within an hour, would you do it? A. I don't think we could, no, sir."

Under cross-examination, Vernon L. Wellbaun, traffic manager for O. I. M. Transit Corporation, another appellant, testified as follows:

"Q. If Crown Products, Inc., at Celina called you and ask-

ed you to deliver a plate that had to be reground to Urbana, to wait for it and to bring it back within a period of six hours, would you do that job? A. No, sir, because we don't serve Urbana in the first place. *We would take it to Lima and transfer it to another carrier at Lima.*

"Q. You would take that grinding and wait for it and get it back within six hours using your connecting carrier? A. We could not since we don't serve Urbana direct. It would be on an interline basis." (Emphasis added.)

Carl Schoenberger, vice president of General Highway Express, Inc., holder of three certificates, under cross-examination, testified that:

"Q. Suppose that call came to you at 2:00 o'clock in the morning to deliver that thing to a 3:00 o'clock airplane at Vandalia. Would you accept that? A. I don't imagine we could make it."

Therefore, the second claim of error is overruled, as it appears that the transportation service offered by the applicant is highly specialized and it is very doubtful whether any existing transportation facilities could render adequate service. The communities affected are in a farming and industrial area, and there appears to be a real need for highly specialized services in motorized transportation in this area.

Finally, it is claimed that appellants were not given the opportunity, provided in Section 4921.12 of the Revised Code, to furnish the service contemplated by the applicant.

Section 4921.12 of the Revised Code is, in part, in this language:

"When an applicant seeks a certificate to serve points in a territory or on a route already served by a motor transportation company holding a certificate of public convenience and necessity, other than such applicant, the commission shall not grant any such additional certificate authorizing the same kind and character of service, in whole or in part, *already authorized to be rendered by such other company,* until such company has been given such opportunity to provide such service found necessary, and has failed to furnish such service." (Emphasis added.)

A factual finding by the commission which we should not

disturb is disclosed in the commission's opinion and order of July 29, 1964, in this language:

"The commission further finds that the service proposed by the applicant *is not offered by any common carrier authorized to serve the territory involved.* The service amounts to a messenger service without interchange with any other carrier, involving same day pickup and delivery. Therefore, the commission finds that the protests are not well made and should be overruled." (Emphasis added.)

The rendering of specialized service has been recognized and approved by this court. In the fourth paragraph of the syllabus in *H. & K. Motor Transportation, Inc., v. Pub. Util. Comm.,* 135 Ohio St. 145, it is said:

"4. Where the public convenience and necessity demand a specialized type of motor transportation service of a kind and character different from that afforded by motor transportation companies already operating under certificate over the same route, a certificate of public convenience and necessity may issue to a motor transportation company limited to such specialized service *without first affording such other motor transportation companies an opportunity to furnish such specialized and limited service * * *.*" (Emphasis added.)

See *Cleveland, Columbus & Cincinnati Highway, Inc., v. Pub. Util. Comm.,* 144 Ohio St. 557, fourth paragraph of the syllabus; *Norwalk Truck Line Co. v. Pub. Util. Comm.,* 148 Ohio St. 247, third paragraph of the syllabus; *B. & N. Transportation, Inc., v. Pub. Util. Comm.,* 153 Ohio St. 441; *Railway Express Agency, Inc., v. Pub. Util. Comm.,* 173 Ohio St. 69. This claim of error is overruled.

It appearing that the order of the Public Utilities Commission is neither unlawful nor unreasonable, it must be, and hereby is, affirmed.

*Order affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, SCHNEIDER and BROWN, JJ., concur.